UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L. STONE, | CASE No. 5:08CV2681 |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| v. | Magistrate Judge George J. Limbert |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Defendant. | |

Michael Stone ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court REVERSE the Administrative Law Judge's ("ALJ") decision and REMAND the instant matter for further factfinding, analysis, and articulation:

**I.   PROCEDURAL HISTORY**

On August 25, 2004, Plaintiff filed applications for DIB and SSI. Tr. at 1[1]; 69-71. His applications were denied initially and on reconsideration. *Id*. at 30-36. On May 19, 2005, Plaintiff requested an administrative hearing. *Id*. at 37. On September 6, 2007, an ALJ conducted an administrative hearing where Plaintiff appeared without counsel. *Id*. at 229-37. The ALJ continued the hearing in order to obtain additional medical records and to afford Plaintiff an opportunity to obtain counsel. On April 30, 2008, a different ALJ conducted a hearing where Plaintiff was represented by counsel. *Id*. at 238-77. The ALJ heard testimony from Plaintiff and from Michael Dorval, a vocational expert. *Id*. On May 21, 2008, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 13-27. On July 14, 2008, Plaintiff requested that the Appeals Council review

---

[1] The transcript contains a notation that the SSI exhibits were not available for inclusion. Tr. at 1. However, both parties appear to be in agreement as to the procedural history pertaining to Plaintiff's SSI application. *See* ECF Dkt. #13 at 2-4; ECF Dkt. #15 at 1.

the ALJ's decision. *Id*. at 12, 223-28. On September 16, 2008, the Appeals Council denied review of the ALJ's decision. *Id*. at 6-9.

On November 13, 2008, Plaintiff filed the instant suit. ECF Dkt. #1. On April 6, 2009, Plaintiff filed a brief on the merits. ECF Dkt. #13. On June 8, 2009, Defendant filed a brief on the merits. ECF Dkt. #15. On July 8, 2009, Plaintiff filed a reply. ECF Dkt. #17.

## II.      SUMMARY OF THE PERTINENT PORTIONS OF THE ALJ's DECISION

The ALJ found that Plaintiff suffered from the following severe impairments: right ankle osteoarthritis, morbid obesity, hypertension, degenerative disc disease, and either borderline intellectual functioning or mild mental retardation. Tr. at 18. The ALJ noted that an issue existed as to whether Plaintiff should be considered mentally retarded or functioning at the borderline level, but for the purposes of determining his severe impairments, he considered both. *Id*. at n. 2.

Pertinent to the issues in the case at bar, the ALJ stated that a note from an unidentified person at a Nashville, Ohio medical clinic diagnosed Plaintiff with hypertension, illiteracy, and mild mental retardation. Tr. at 20, n. 18. The ALJ also addressed a consultative examination by J. Joseph Konieczny, Ph.D. *Id*. at 20. Dr. Konieczny had observed Plaintiff's limited education and the fact that he repeated several grades while in school. *Id*. at 20. Dr. Konieczny concluded that:

> although results of the intellectual and some of the cognitive testing place [Plaintiff's] capabilities in a range that could suggest a diagnosis of Mild Mental Retardation, *Michael's history and presentation would suggest a higher level of functioning.* as such a diagnosis of borderline intellectual functioning would seem more appropriate than that of mild mental retardation. No Further diagnosis is offered.

*Id*. at 20 (emphasis original in ALJ's opinion but added to Dr. Konieczny statement). The ALJ went on to note that:

> A state disability determination service (DDS) mental impairment evaluator analyzed the conclusions of Dr. Konieczny and found that the claimant suffered from mental retardation, but noted that, in accordance with the views of Dr. Konieczny, the claimant actually was functioning in the borderline intellectual functioning range.

*Id*. at 21 (internal citation omitted). The ALJ also noted that Ellen Stark, Ph.D. performed consultative examinations of Plaintiff on two occasions and found "virtually no limitations" in any of 20 functions designed to test mental acuity. *Id*. (quoted language refers to ALJ's decision). The ALJ noted that Dr. Stark did not diagnose borderline intellectual functioning or mental retardation.

-2-

*Id*.  Instead, she observed that Plaintiff's illiteracy and innumeracy presented the primary impediments to the claimant obtaining and maintaining a job. *Id*.

In determining whether Plaintiff met Listing 12.05C, the ALJ stated that 12.00(D)(6) was particularly pertinent and it provides in its pertinent part "since the results of intelligence tests ***are only part*** of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and with the degree of functional limitation." Tr. at 23 (emphasis in original). The ALJ went on to state that:

> In this case, at least one examiner explicitly indicated that the results of the claimants intelligence scores, which by themselves indicated a listing may be met, were ***not*** necessarily valid. Indeed, this examiner concluded that "Michael's history and presentation would suggest a higher level of functioning.

*Id*. at 23 (emphasis in original). The ALJ went on to note that, in contending that he met Listing 12.05C, Plaintiff placed reliance on assertions of Dr. Dailey, a family practitioner. *Id*. at n.31. The ALJ stated that Dr. Dailey had no specialized training in behavioral sciences like Dr. Konieczny had. *Id*. The ALJ further stated that "It is important to remember that Plaintiff had a lengthy and successful employment history and lost ***none*** of his jobs because any reason attributable to ***him***." *Id*. (emphasis in original). The ALJ further reasoned that Dr. Konieczny's conclusions were buttressed by Dr. Stark's reports, which demonstrate that Plaintiff's limitations do not preclude him from obtaining work; they only made it harder for him to obtain work. *Id*.

In regard to Listing 12.05C, the ALJ further stated:

> In terms of the requirements of paragraph C, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation on function. As noted, there is legitimate reason to doubt the validity of these scored, and they are inconsistent with the claimant's developmental and functional history.
>
> I further observe that, contrary to the requirements of listing 12.00(D)(6). no examiner has ever persuasively observed that the intelligence test results are *consistent* with the claimant's level of development and functional history.

Tr. at 24 (internal citations omitted).

The ALJ went on to determine that Plaintiff has the residual functional capacity to perform light work with a sit/stand option, a limitation that the duties would not involve reading, and a

limitation that his duties could be performed in simple one and two step operations. Tr. at 25. The ALJ concluded that Plaintiff could not perform his past relevant work due to his physical impairments, but the ALJ also concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id*. at 26. Therefore, the ALJ concluded that Plaintiff was not disabled. *Id*. at 27.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS

In the third step of the analysis to determine a claimant's entitlement to SSI or DIB, it is the claimant's burden to bring forth evidence to establish that his impairment meets or is medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs*., 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that his impairment meets all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987); 20 C.F.R. § 404.1525(d). An impairment that meets only some of the medical criteria does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

In order to establish a disability pursuant to Listing 12.05C, a claimant must meet three requirements: (1) he must satisfy the introductory paragraph of Listing 12.05, which requires the showing of significantly subaverage general intellectual functioning with deficits in adaptive functioning that had initially manifested prior to the age of 22; (2) he must establish that he meets the first requirement of 12.05C by showing that he has a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) he must establish that he meets the second requirement of 12.05C by showing he has a physical or mental impairment, other than the mental retardation impairment, that imposes an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App.1, Listings 12.00A, 12.05, 12.05C; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the case at bar, Plaintiff raises two arguments: (1) the ALJ improperly concluded that Plaintiff did not have a valid IQ score of 60 through 70 for Listing 12.05C purposes; and (2) the ALJ failed to recognize Plaintiff's deficits in adaptive functioning. ECF Dkt. #13 at 10-15. It is not necessary to address Petitioner's second argument because, as discussed below, the ALJ incorrectly determined that Plaintiff did not have a subaverage IQ for Listing 12.05C purposes. In determining that Plaintiff did not meet Listing 12.05C, the ALJ looked only to the validity of Plaintiff's IQ scores and did not consider adaptive functioning since Listing 12.05C sets forth a conjunctive test and the ALJ believed that the invalid IQ score was sufficient to find that Plaintiff did not meet the Listing. *See* Tr. at 23. Therefore, the undersigned will address only the issue of the validity of Plaintiff's IQ scores and note that, should this case be remanded and should the ALJ determine that Plaintiff does have a valid subaverage IQ for Listing 12.05C purposes, then he will have to go on to assess Plaintiff's adaptive functioning.

Plaintiff contends that the ALJ's reliance upon Dr. Konieczny's opinion is not supported by substantial evidence. ECF Dkt. #13 at 10. Plaintiff contends that when Dr. Konieczny opined that Plaintiff's IQ scores were not necessarily valid, he did not discuss an IQ test that was taken in April 1971 when Plaintiff was 11 years old. *Id*. at 10-12. Plaintiff contends that the 1971 IQ test (Tr. at 108) produced scores that were "almost identical" to those found by Dr. Konieczny.[2] *Id*. at 11. Plaintiff further notes that the ALJ never mention the 1971 IQ scores in his decision. *Id*.

Defendant contends that substantial evidence supports the ALJ's finding because Plaintiff has failed to demonstrate that he meets the diagnostic criteria of Listing 12.05C. ECF Dkt. #15 at 8. Defendant reasons that Dr. Konieczny assessed Plaintiff's functioning in the borderline range and did not diagnose mental retardation. *Id*. at 9. Defendant also contends that Plaintiff does not have deficits in adaptive functioning. *Id*. at 10-11.

The undersigned recommends that the Court reject Defendant's argument. First, with regard

---

[2] April, 1971 test scores: WISC scale Verbal 63, Performance 69, Full Scale 63 (Tr. at 108)

Sept. 30, 2004 test scores: WAIS-III scale Verbal 66, Performance 68, Full Scale 64 (Tr. at 138)

-6-

to adaptive functioning, Defendant's argument constitutes an improper *post hoc* rationalization of the ALJ's decision because the ALJ never assessed Plaintiff's adaptive functioning.  Therefore, Defendant's argument lacks merit and should be rejected.  *See Hyatt Corporation v. N.L.R.B.*, 929 F.2d 361, 367 (6th Cir. 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order . . . The court is not free to accept `appellate counsel's *post hoc* rationalization for agency action in lieu of reasons and findings enunciated by the Board.' ").

With respect to Plaintiff's IQ scores, the Court should reject Defendant's argument and adopt Plaintiff's position because it is well established that a claimant's IQ deficit must be established for the developmental stage (*i.e.*, before the age of 22) for the purposes of assessing Listing 12.05C, but the ALJ and the consultative examiners in this case improperly focused on post-developmental IQ testing where developmental-stage IQ testing was available.  *See e.g., Dishman v. Astrue*, Case No. 4:08-cv-58, 2009 WL 2823653, (E.D.Tenn. Aug. 27, 2009), slip op. at 12 ("Section 12.05C essentially provides that a claimant will be found disabled if he has a valid IQ score of 60-70 (**that was an accurate assessment of his functioning before he attained age 22. . .** ") (emphasis added); *West v. Com'r Social Sec. Admin.*, 240 Fed.Appx. 692, 2007 WL 1991059 (6th Cir. July 5, 2007), unreported.   A claimant *may* establish subaverage IQ during the developmental stages by introducing an IQ test obtained prior to age 22, or he may prove the deficit in other ways.  *West*, 2007 WL 1991059 at **5.   It follows that a claimant is entitled to have the Commissioner consider such evidence when it is properly presented at the administrative level. *See Howell v. Barnhart*, Case No. 1:06CV1235 (N.D. Ohio March 3, 2008), unreported.

A consultative physician is permitted to infer that a post-developmental IQ score reflects an individual's intellectual functioning during the developmental stages if developmental-stage testing is not available and  no evidence exists to indicate that a person's abilities have changed.  *See Bilka v. Commissioner of Social Security*, 252 F.Supp.2d 472 (N.D.Ohio, 2002).   In *Bilka*, the Sixth Circuit held that IQ testing obtained following the age of 22 could be used to infer intellectual functioning during the developmental stage, where there was no testing conducted during the developmental stage.  *Id*.  Unlike *Bilka*, however, developmental IQ testing *was* conducted in this

-7-

case. The ALJ's reliance on Dr. Konieczny's opinion and his assessment of an IQ score measured at the age of 44 cannot be considered substantial evidence when another IQ from the age of 11 was available and not addressed. In this case, Plaintiff did have a subaverage IQ test obtained in the developmental stages, but neither the consulting physicians nor the ALJ addressed it. *See* Tr. at 108 (Plaintiff's IQ test from age 11); Tr. at 133-138 (Dr. Konieczny made no mention of the 1971 IQ test); Tr. at 220-22 (Dr. Stark made no mention of the 1971 IQ test); Tr. at 16-27(the ALJ made no mention of the 1971 IQ test).

The undersigned notes that in challenging the ALJ's reliance on Dr. Konieczny's and Dr. Stark's opinions, Plaintiff has directed the Court to competent evidence of developmental-stage IQ testing. An ALJ need only consider IQ tests obtained by qualified individuals that are identified in records. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 126 (6th Cir. 2003); *Hayes v. Secretary of Health, Ed. and Welfare*, 656 F.2d 204, 205-06 (6th Cir. 1981). The Sixth Circuit noted in *Hayes* that an IQ test administered by an unidentified individual "[could] not be considered because the record does not reveal that the test was administered by **qualified personnel**, and because it fails to meet other testing requirements provided in the regulations. 20 C.F.R. Part 416, Subpart I, Appendix 1, s 12.00(B)(4).") (emphasis added). In the case at bar, however, Plaintiff's school records include a note from School Psychologist William Caskey, indicating that he saw Plaintiff on April, 5, 1971, the same date that Plaintiff's IQ test was obtained. Tr. at 109. Therefore, Plaintiff has presented sufficient evidence to establish that the test was conducted by "qualified personnel."

In *Howell,* this Court reversed an ALJ's finding that a claimant did not satisfy Listing 12.05C because the claimant had presented a subaverage IQ score obtained at the age of 14 to challenge the validity of an IQ test administered by a consultative examiner in the post-developmental stage. *See Howell*, Case No. 1:06CV1235, ECF Dkt. #17 (Limbert , M.J., R&R) at 5-8, 13-15; ECF Dkt. # 20 (Boyko, J., Order adopting R&R). Similarly, here Plaintiff presented evidence to challenge post-developmental IQ testing and the ALJ nevertheless relied on the opinions of consultative examiners who did not consider developmental IQ testing. Under the *Howell* case, the undersigned believes

that the instant matter should be reversed and remanded for further factfinding, analysis, and articulation by the ALJ.

The undersigned believes that it constitutes reversable error to ignore perhaps the most probative evidence of the intellectual functioning for Listing 12.05C purposes by not mentioning an IQ test taken during the developmental period and relying wholly on one taken 33 years later. In determining that Plaintiff does not satisfy the IQ requirement in Listing 12.05C, the ALJ and Defendant have improperly focused on IQ tests obtained in the post-developmental stage. Listing 12.05C, however, specifically requires a showing of subaverage intellectual functioning during the developmental period. In this case the consultative examiners relied on Plaintiff's history and presentation to determine that his subaverage IQ scores did not accurately depict his intellectual functioning. *See* Tr. at 136. However, had they been aware of subaverage IQ testing during the developmental stage, their opinions may have been different. An article in the American Psychologist observed that:

> It is important to understand what remains stable and what changes in the development of intelligence. A child whose IQ score remains the same from age 6 to age 18 does not exhibit the same performance throughout that period. On the contrary, steady gains in general knowledge, vocabulary, reasoning ability, etc. will be apparent. What does *not* change is his or her score in comparison to that of other individuals of the same age. A six-year old with an IQ of 100 is at the mean of six-year-olds; an 18-year-old with that score is at the mean of 18-year-olds.

Neisser, Ulric, et al., *Intelligence: Knowns and Unknowns*, American Psychologist (Feb. 1996) (emphasis in original). Unlike *Bilka* where it was appropriate to rely on post-developmental IQ testing and vocational success because developmental-stage IQ testing was not available, developmental-stage testing was conducted in the case at bar, and the need to infer developmental-stage intellectual functioning from a post-developmental test is diminished, if not eliminated.

Further, Defendant's contention that the ALJ's decision should be affirmed because the consultative examiners did not diagnose mental retardation should be rejected. Defendant's argument relies on the validity of the consultative examiners' IQ testing. The undersigned notes that the consultative examiners very well may have offered a different diagnosis if they had been aware

of the IQ testing taken at age 11 because *The Diagnostic and Statistical Manual of Mental Disorders* (4th ed. text revision 2000) ("DSM-IV-TR") requires onset of a subaverage IQ during the developmental stage. The language of the diagnostic criteria in the introductory paragraph of Listing 12.05 closely tracks the diagnostic criteria for mental retardation set forth in the DSM-IV-TR. The DSM-IV-TR provides the following diagnostic criteria for mental retardation:

> A. Significantly subaverage intellectual functioning: an IQ of approximately 70 or below on an individually administered IQ test (for infants, a clinical judgment of significantly subaverage intellectual functioning).
>
> B. Concurrent deficits or impairments in present adaptive functioning (i.e., the person's effectiveness in meeting the standards expected for his or her age by his or her cultural group) in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.
>
> C. ***The onset before age 18 years.***
>
> *Code*[3] based on degree of severity reflecting level of intellectual impairment:
>
> **317 Mild Mental Retardation:**            IQ level 50-55 to approximately 70
>
> **318.0 Moderate Mental Retardation:**      IQ level 35-40 to 50-55
>
> **318.1 Severe Mental Retardation:**        IQ level 20-25 to 35-40
>
> **318.2 Profound Mental Retardation:**      IQ level below 20 or 25
>
> **319 Mental Retardation, Severity Unspecified:**   when there is strong presumption of Mental Retardation but the person's intelligence is untestable by standard tests.

DSM-IV-TR at 49 (italicized and bold emphasis added) (italicized only and bold only emphasis original). Although both Dr. Konieczny and Dr. Stark interpreted the validity of Plaintiff's IQ scores taken in September of 2004, it is difficult to maintain confidence in their opinions where the clinical diagnostic criteria for mental retardation emphasize onset during the developmental stages and the consulting examiners were either unaware of the developmental IQ test or failed to address it. In

---

[3] The DSM-IV-TR assigns a numerical code to each mental disorder. Under the heading of "Mental Retardation," the DSM-IV-TR lists five varieties of mental retardation based upon the severity of the person's cognitive deficiency.

short, the fact that neither doctor diagnosed Plaintiff with mental retardation is unpersuasive where they did not address important diagnostic evidence.

While the ALJ retains the responsibility for making the ultimate determination of disability, he may not rely on an expert's opinion unless the opinion upon which he ultimately relies is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Schuler v. Commissioner of Social Security*, No. 03-3734.,109 Fed.Appx. 97, 101 (6th Cir. September 8, 2004), unpublished. In this case, the ALJ's reliance on Dr. Konieczny and Dr. Stark's opinion was not based upon substantial evidence, and is therefore unjustified because Dr. Konieczny did not address Plaintiff's IQ score obtained during the developmental stage. Aware of this omission, a reasonable mind could not accept Dr. Konieczny's diagnosis and assessment of Plaintiff's IQ as reliable.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court Reverse the ALJ's decision and REMAND the instant case for further factfinding, analysis, and articulation by the ALJ as to whether Plaintiff meets Listing 12.05C.


Date: September 21, 2009          */s/George J. Limbert*
                                  GEORGE J. LIMBERT
                                  U.S. MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).